Good morning, Members of the Assembly of the Courts. My name is Thomas Muguslova. I'm going to be asking the Petitioner in this matter, Waiyono Pramual. There are four issues in this matter, each related to a specific application. You're fine. That's good. Take your socks off, Petitioner. Is the Petitioner no longer representing our EO? If you are a EO stand-in for the Petitioner, is the Petitioner no longer representing him at this point? He's still on that dock, as I understand it. So you're now representing him? Yes. As I was saying, there were four issues. That was a good version. Thank you. As I was saying, there were four issues, each one related to a specific application that was filed in Petitioner's Removable Proceedings. That would be a silo of a totally unremovable protection under CAT and a special rule cancellation. As a panel, as a preference, I was going to begin with the CAT application, because that's one that the judge was in great interest in during the proceedings. The BIA had reversed the judge's decision granting the CAT application. And the matter ended up in defense. The government filed a motion of remand so the BIA could reassess that decision based on the intervening case, Reader v. Holder, which was published in 2012. It went back to the BIA. They issued another decision. Here we are. It's our position, since the issuance of the second decision, that the BIA is still not in compliance with the terms. We have the strongest evidence that was for a CAT finding. The BIA is satisfied with the IG's findings. Clearly, everyone is. That's a pretty high standard for the BIA to be satisfied with. Is the other satisfied? Can you recite first of all the evidence in favor of the CAT findings? Well, I'll start with the ones that the IHA specifically relied upon in her decision. The most important one, in my opinion, is the 2007 U.S. Department of State report specifically about Thailand and the problems it has with trafficking and victims of trafficking. The UNHCR report, which, while we acknowledge it doesn't specifically talk about Thailand, the judge did make comparisons between the two reports and found some inconsistent clarities between the two. We find them to have persuasive. Is there a connection between the Convention against Torture and Trafficking in Thailand? I'm sorry, your? Do you think there's a connection between the trafficking in Thailand and the Convention against Torture? How do you get to a truth? Certainly. So, trafficking in Thailand. Right, so the reports, the detail, and the petitioner has also testified regarding her fear of return, and the fear is basically that because she was a trafficking victim, and because she disdained the obligation, the debt obligation that the traffickers gave to her, she has engaged that those same traffickers, upon her return to Thailand, will force her to engage in prostitution to pay the remaining portion of that debt. Is it true that, for example, you were involved in drug dealing, and now you don't want to go back to the country you came from because the drug dealers have been for you? Do you think you need official conduct or governmental conduct in torture? You do. You need government aggressions, and the reports do detail how mid- and low-level government agents in Thailand engage, that were consistent with the traffickers themselves, in an area that corrupts, and to the point, not even towards the traffickers, where they're actually complicit with the trafficking themselves. There is very specific information on the government acquittances and aspects of this case in the reports, and the judge specifically cited those pieces of information in her decision. I think the bigger issue here is not what the immigration judge specifically cited. It's the fact that the BIA didn't actually discuss the evidence that the judge relied upon in her decision. Ridor V. Holder is very clear in these type of issues, where the issue is what will happen to the petitioner once she returns to the factual request. They are under the clear error standard, which requires them to review the evidence. Ridor actually said they must grapple with the evidence, grapple, and explain why the evidence in detail was insufficient for finding of cats, and so insufficient that the reliance of it is clear error. And frankly, their decision, they didn't do that. This was reassessed. They reassessed the decision. They made the same decision. You can clearly see that they copied and pasted the first BIA decision to the second one in the analysis portion. The BIA decision about the second one is a lot longer. It's a lot longer because they detail the, quote, the evidence that the judge relied upon. This is piece of evidence, piece of evidence, piece of evidence the judge relied on. It does clear error because the evidence is insufficient. There is not enough pursuit into Ridor V. Holder to explain why. For me, the question of cat was really the likelihood that those who were offered to the United States to return for an assessment of $40,000 will actually seek to carry out some action, especially returns to the townhouse, to enforce the payment or to do something else. How strong is that evidence? It's pretty strong, Your Honor. I think, again, we're not here to convince you that there's a more likely than not chance that that would happen. It should be true. We're just here to show that the BIA didn't fulfill their obligation to show that the judge committed clear error in her decision. But the judge cited numerous evidence, and there is enough to make them find him. The judge also cited a number of accusations in the reports. He has not been able to ascertain the government had trafficked him. The reports state that trafficking in talent is illegal. Therefore, the jurors have honored him as a criminal organization. So, Your Honor, the question is, would there be evidence that there would be evidence that the BIA has considered forcing this sort of contract, the BIA, for her to engage in security activity? Well, there are details that the government works with the traffickers. It's presumed that the money that she owes the traffickers is money that the government has an interest in as well. But, again, the point here is that the jurors had enough evidence to grant the application. The BIA had to show why there was clear error reviewing the evidence. They didn't do that. The only thing they cited in their decision was a UNHCR report, and just a single sentence stating that it didn't directly specify Thailand. But the judge acknowledged that in her decision. She said, I acknowledge that it doesn't specifically relate to Thailand, but it's because of the direct similarities between that report and the Steve report and petitioner's testimony that I find that the point where the brain has been made to displace the answer is that it's irrelevant to this question, that once she leaves Los Angeles, still owing $20,000 of the $40,000, she received several calls from, I guess, I don't call him, but I guess he's called her. We did have him in Los Angeles. He says, well, he owed the traffickers $20,000, but those calls are more like warnings than enforcement. $20,000, you know, basically, I don't want to see you again. And as far as I can tell, there have been no active efforts to pursue and enforce any of the ISDs. Is there any clear error there? Is there something likely to know something happening if she returns to Thailand? It's something that I.J. considered in her decision. Based on all the evidence, all the circumstances, she did acknowledge that it was a form of warning that the madam gave her. But the facts have been established that this organization that brought her here is a criminal organization. Organizations that have the business of trafficking in Thailand are dangerous organizations in Thailand. The report establishes that. Did she advocate that word also in the U.S.? Maybe in the U.S. or in the U.S. against the person that she's been talking to? It actually wasn't really I.J.'s decision. It's been written on claims and such and such. I.J.'s decision doesn't help with the constant circumstances that are a very tricky concept in prostitution cases. But she was not tricked into this. Yeah, well, I believe that Judd actually contradicted herself in her decision. She did say that the petitioner was a trafficking victim, and then ultimately decides that she wasn't. I think the definition of trafficking is quite broad, actually. The UNHCR report does provide the definition of administrative record at 439. It's the recruitment, transportation, transfer, harboring, or receipts of a person by means of threat, force, coercion, fraud, or simply because they're in a power position and the person is in a power of vulnerability. I don't think it's even a question that she was a victim of trafficking, even if initially she agreed to do it when she got to the United States. I think Judd acknowledged this. That wasn't the end of her journey. She was still obligated under debt bondage. She was still disemployed. She was still smuggled. She was still a trafficking victim. The judge said this in her decision, and the BIA does not explain why the evidence she relied upon in making those findings wasn't sufficient. Again, they are required to review the evidence and explain why it's insufficient. BIDOR has established that they didn't do it at all. All they did was add towards peer-to-peer standards to their decision and then, again, copied and pasted the first decision, which is presumably insufficient because of the subsequent remand after that. What was the point of remanding in this case? They were going to issue the same decision after BIDOR. It's not sufficient. The decision to overturn the judge's decision should be vacant and can never be granted. If you have a question on that issue, I do want to touch briefly on the Littleton issue. We believe that the decision was also aired by the immigration judge, that it appears the only issue that the judge had with that application is that the petitioner had established she was a member of a particular social group. It's our position that the probability of harm upon return to Thailand was established in response to the social group Trafficking victims who escaped a trafficker's home and it was a period of time when she was not under the control of her traffickers. Well, was she left out? That issue wasn't explained. Was there a period of time there or was she for quite a period of time? Sorry? For quite a period of time. On the issue that she was originally held, she was not under the control of the traffickers. Right, because she escaped. That's the point of the social group. You had to be a trafficking victim. You had to escape the traffickers. She did that when she left for Thailand. Therefore, she is a member of that group. Now, the judge said, ultimately, she was an enforced trafficking victim, which thanks to the judge for being a member of that group. As I stated earlier, she contributes to that ultimate assertion with more specific findings prior in her own decision. What she holds is she is a trafficking victim simply by the fact that she was here under involuntary servitude, under debt bondage and under that obligation with the traffickers. So because of that contradiction, we believe that at least a remand is warranted so she can clarify. But we believe that the circumstances of Petitioner's Matter, or circumstances in this case, show that she was a trafficking victim. She did escape that obligation she had and now fears harm from those traffickers because of that. Since that was the only reason the Petitioner application was denied, we believe it should be reversed or remanded for further proceedings. If there's other questions, I'll be glad to answer them. Let's see if there's anything else to say. There's a few minutes remaining. Good morning. It's still morning. May it please the Court, my name is Sarah Fricke-Lazy, the Attorney General of the United States. I'd like to thank Your Honors for moving this case to the end of the docket before I begin. Your Honors, at bottom, this case is about an alien's ability to meet a burden to establish that she is eligible for all relief or protection from removal that she seeks. Substantial evidence supports the agency's finding that she failed to meet that burden in all four responses. The Petitioner's counsel has stated that the withholding finding is only based on one factor, and that is incorrect. The immigration judge actually denied withholding on three independent, dispositive factors. First, that the alien failed to show that she suffered past persecution in Thailand, which is a requirement under the statute for withholding. Second, that she failed to establish a likelihood of future persecution when she could be returned to Thailand. And third, that she failed to show a nexus between any harm she feared and a protected ground. Within that third nexus finding, the factor that the Petitioner mostly stresses is an error the immigration judge found, that the alien was not a member of the particular social group that she alleged. Even if the court were to disagree with the immigration judge in this respect, the immigration judge's additional dispositive findings that the alien failed to show a likelihood of future harm still stands and can still support the finding with regards to withholding. The immigration judge also provided substantial evidence, and substantial evidence also supports the immigration judge's findings that the alien failed to establish that she was eligible for special removal cancellation, and that she failed to show that she was highly violent to her asylum application. Finally, the court should also affirm the board's decision to vacate the cap finding because it's also sufficient. I don't agree with vacating the board's finding. I definitely think the board made a mistake in a sense that it did not have sufficient grounds for making clear error, even though there may be substantial evidence to support what the board concluded. But that wasn't the test the board was asked to apply. If we conclude that the board mystified its cast, will we grant it? If you conclude that, yes, it would grant the agreement. So this is not really a substantial evidence question. It's more of a questions about what the board heard in reversing the IJ. With respect to the cap finding, yes. And I would say if the court disagrees with that cap finding and the way the board applied the rhetoric test, it should still deny the petitioner referring for all other forms of relief. But may I? Sure, absolutely. Focusing on Kat. Excuse me. Focusing on Kat, I would say that the board did not err in applying the rhetoric test. And contrary to what the petitioner desired, the board did not simply copy and paste the decision that it had made prior to rhetoric. Rather, it cited correctly the test in rhetoric and properly applied it. The test in rhetoric is that factual findings are reviewed for clear error. And rhetoric states specifically that the finding of a likelihood of future harm is a factual finding. The board specifically and cautiously referred to the findings of the immigration judge, the predicate facts in the case, and found that the board erred in making the factual conclusion that those predicate facts established likelihood of future harm. And that finding is not erroneous. That finding is correct in the application of the rhetoric test. And it is supported by substantial evidence. Well, we'll put it back to you. You just put your substantial evidence back in there. I think that's correct. The substantial evidence is the test. That's where the test fell. But I would say that the board clearly did not err in applying the test. But did it find it clear error? It did find it clear error. It looked exactly right. I'm sorry. I don't mean that. But that is to say, if there was, I'll say it this way. I think this is probably at least a fair summary of the way the test works. If there was sufficient evidence, maybe substantial evidence to support what the IG found, the BIA has to leave them alone. Right. And if there's substantial evidence, the test works. Now, in the case of this posture, it really works in favor of the PSR. The PSR is not FDA-approved evidence. Now, if the PSR is to have sufficient evidence, then we would support what the IG finds. I would agree that that's correct. Excuse me. And that that is a correct assessment of the test. The test is on the advanced. If the IG is advanced and there's sufficient evidence to support what the IG concludes, I think I can leave them alone. That's probably another way of saying clear error. Yeah. Exactly. Right, right. I agree with that assessment. However, the alien has still failed to show that the board erred in this case in concluding that the immigration judge erred in this case. I'm sorry for the circularity of that argument. But if I can be clear about this, the board clearly referred, again, to the predicate facts that the immigration judge found. It's not relying on facts that aren't already existent in the record when it found clear error. What it found error with was the immigration judge's transfusion or transmorphing these factual findings that had not been prosecuted to a finding of clear likelihood of probability. The mistake that the board found was clear error is the transferring of a possibility and finding the factual finding that a possibility of harm is, in fact, a probability of harm. And I understand that that feels nebulous, but it is a test in its own right. And the board's conclusion should stand and be without. Thank you. Well, there's at least some possibility and the question is some likelihood. And the record we have is those are something that's a little bit sparse. We don't really know a lot about the organization that brought her over. We do know that it was an exploitative deal, that is to say, taking the United States. And as soon as you pay us $40,000, your proceeds from prostitution will say you're here for you to go. Well, she works for New York. She's only paid off $40,000. That's not a very good deal. I mean, it's a pretty exploitative operation that I think probably fairly characterized in some budgetary respects. In the definition, the scope of the definition is trafficking. We do know that the madam in Los Angeles has essentially warned her that they're after her. And so don't let me see you again. And it may well be that the organization is not going to pursue her so long as she's moving from place to place within the United States. But when she comes back to Thailand, she's got a family there. I think it would be fairly easy to locate her. She's been sending money back to her family all this time, so the family's going to be sort of gone, whatever. So why is it unlikely that the organization that says she still has a little over $20,000, when she gets back to Thailand, it's much easier to get their hands on her? She's got a family back there. She's got a daughter. Apparently she's been supporting her parents as well. Why is the image here wrong? Your Honor, the immigration judge is wrong, again, because of the additional facts of the record. I don't disagree with Dwayne's use of such the facts or describe the facts in this case, but there are the additional facts that the petitioner has lived in the United States for almost 20 years, and her family in Thailand has never been threatened. She's in no hurry. This is associated with what either a person or a witness indicated. Again, the record is not clear as to the strength or sophistication of the group with whom she contracted to come to the United States, but she's been out of contact with them undisputedly for a long time, and typically in the record evidence, when someone is a victim of trafficking, the typical pattern of trafficking is that that person's family members can be threatened to enforce the law of the debt bondage, and that factually is not present in this case. The alien's contact after she left the control of this group is also indicative that she wasn't trafficked and that she doesn't bear their reprisals, and they haven't been able to contact her since. Well, she says it's a new bankruptcy, and I don't know how close the age was. Right. It's not exactly a first-class employment. I mean, that's also true. That is also true, yeah. I would also note that the facts in the record, again, as you noted, are sparse, and they don't even clearly indicate that this woman in Los Angeles is actually in contact with people from Thailand now that this woman is out of her life again. So this is what she's trying to be as part of the gang. She may not be part of the gang, but she may just be an unruly brothel, and this gang produces people from time to time. Right. It's unclear whether the gang attempts her directly or continually. Could you say something about the relationship between her and the woman? I think in that regard... Oh, sorry. In that regard, the standard overview here, thus, especially for the withholding, but also for the board's assessment of the facts with regard to the cat, is in our favor, and because we could look at the facts fresh, maybe in different ways, and conclude that the alien was trafficked or wasn't or that she does face an arm or doesn't, that's not enough to remand this case. The board and the immigration judge in denying these claims pointed to specific concociant evidence that belies the fact that the alien has established eligibility for the relationship protection she seeks. There was no evidence that any was there in the record of government requests. The only evidence in the record of government involvement, as the petitioner correctly cited, is the State Department report from 2006. That report indicates that some officers are involved or look the other way at trafficking, and that fact, again, probably... Excuse me. Okay, we're going to get circular here. That evidence, again, points to possibility but not to probability. I would also like to note that in reviewing the record, our office looks at records to be sure that they're not so stale that the case cannot go forward, and I wanted to note that I looked at the 2016 report for trafficking in persons, and the situation in Thailand has not materially changed. Is that all? I would like to conclude. Your Honor, again, at the bottom, this case is about the alien's burden to establish her eligibility for the relationship protection she seeks. As we have discussed, the record actually is sparse in areas. The alien has failed to establish her eligibility, and therefore, the substantial evidence does support those findings. The alien has failed to point probative evidence that would compel a reversal of the conclusion with regards to timeliness, withholding, and social rule cancellation. Any petitioners also failed to show that the board misapplied the rectorial standard implying that the factual findings found likely that a future torture were clearly erroneous, and put you listed at the petitioner rating. Thank you. Okay. Thank you. Thank you, Your Honor. While it is true that it is the burden of the alien of the petitioner to prove eligibility for relief, that burden has been met. The immigration judge did grant the CAD application. She met her burden. The issue now is whether the BIA has sufficiently explained why they reversed the judge's decision, and they haven't. With respect to counsel, Your Honor, I apologize, but I have reversed the appeal to review administrative record 5 and administrative record 105. The BIA clearly copy and pasted the analysis portion of the CAT analysis. It is true that they listed the evidence in the record, and then they did say that the judge committed clear error in reviewing the evidence. They did not explain why, and that is the big problem here with their decisions, just as it was in the first decision before the remand. They didn't explain why the evidence wasn't sufficient, and that is the crucial aspect to the retorting case is what they needed to do, explain why the evidence wasn't sufficient, why it led to the clear error on their part of going to judge or answering the application, and they failed to do that. It's very obvious that they failed to do that because they clearly used the same decision. Simply stating the evidence without actually explaining what kind of impact it had on the judge's decision is insufficient for a suit to retort, and frankly, they failed to comply with it. They labeled it a clear error analysis and it continues to feel like de novo analysis. It's hard to know whether it's even a proper de novo analysis without even really going into the evidence at all. I think it's clearly not sufficient under the Midori standard that was established in 2012. As far as the whistleblowing application goes, they did say that the only reason it was denied was because it was for minor membership in a particular social group. The counsel mentioned the past persecution issue. We don't need to show past persecution to the whistleblower mobile application grant. We probably need to show a clear probability of future persecution, which we did. If we had not done that, the CAT application has the same probability, more likely than not, to be tortured in CAT or more likely than not to be persecuted, which was held in Chicago. In general, that's correct, but the probability of whether you're going to be tortured in Thailand, we need to show a few amounts of evidence. As you do with whistleblowing applications, you show the probability you're going to be harmed by a particular social group. Torture requires a higher level of injury, even more of a reason why, because the IJA grant application should have said that the probability of harm from the withholding was sufficient as well. Because the CAT is harder, but it was mentioned in the grant application that it would make sure there's been a particular social group trafficking victims with the same perpetrators. We believe that the future persecution was established by way of the CAT decision, and as I mentioned earlier, there's this issue of the IJA did establish that it was a trafficking victim who escaped, but none of this contradicts that. That does not reflect that the family was ever contacted regarding whereabouts of the petitioner. That's in essence, again, a de novo standard of review analysis, and it's not relevant to where we are right now. What we are right now is we need to look at what the IJA decided. This application was already granted. I'm not here to convince you to grant the application in the first instance. We're trying to see whether the BIA are in reverse unison. All we know about the IJA is looking at the same facts that are working for the IJ and saying that the IJ clearly appeared in assessing those facts as a condition to establish the likelihood of torture. Right. It's only when you look at the same, the IJ and the BIA can look at the same facts that the IJ considered and determined that the IJ appeared and determined that those facts did stand for torture. Greg can do that, but he also wants to explain why those facts or that evidence isn't sufficient to find, to make the same decision to judge them. He didn't make that explanation. He said these are the facts, the subject is insufficient. I mean, that was basically the extent of their analysis. They needed to do more than that, frankly, and they didn't even make any attempts to do that. And I think it's fair just by reviewing their decision and the very general conclusory statements that they make that they were not immediately sent into office. Thanks. Thank you. Any more questions? If there are no more questions, I suggest that the decision is made at the next hearing, so thank you.
judges: Fuentes, W. Fletcher, Rawlinson